UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES NEWSOME,

    Plaintiff,

v.

    Case No. 11-10149
    Honorable Thomas L. Ludington

YOUNG SUPPLY CO., et al.,

    Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff James Newsome brought this action under the Family & Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., alleging that Young Supply Company, Staffing Source Personnel, Inc. d/b/a Driver Source, Inc., and Driver Source, Inc. (collectively, "Defendants") violated his job restoration rights under the FMLA when they refused to restore his original job position as a truck driver, or an equivalent position required by the FMLA. ECF No. 1. In lieu of filing an answer to the complaint, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 6. The Court entered an order construing Defendants' motion as one for summary judgment, and permitting the parties to engage in limited discovery regarding whether Defendants have 50 or more employees within a 75 mile radius of Plaintiff's worksite. ECF No. 10.

Defendants admit that they each employed 50 or more employees, ECF No. 6 at 4-5, that they were both "joint employers" of Plaintiff within the meaning of the FMLA, *id.* at 6, n.5, that Staffing Source, whose primary place of business is located in Dearborn, Michigan, was the primary employer within this joint employment enterprise, *id.*, and that if Staffing Source's facility is deemed

to be Plaintiff's "work site" under the joint employment enterprise, Defendants are liable to Plaintiff under the FMLA, *id.* at 3, 5.

Defendants, however, challenge the authority of 29 C.F.R. § 825.111(a)(3) (1995), which is the Department of Labor regulation establishing Staffing Source's facility as Plaintiff's work site for purposes of determining whether the 50 employee/75 mile coverage exclusion applies, as an invalid exercise of the Department's rule-making authority under *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Defendants also claim that a regulation not applicable to joint employment enterprises, 29 CFR § 825.111(a)(2), is controlling and dictates that Plaintiff's work site is Young Supply Company's Saginaw facility. Finally, Defendants allege that if 29 C.F.R. § 825.111(a)(3) (1995) is deemed valid, the amended version of that regulation, 29 C.F.R. § 825.111(a)(3) (2009), which did not take effect until after Plaintiff had already invoked his rights under the FMLA and commenced his leave, should be retroactively applied to this case to bar coverage under the FMLA. Plaintiff responds that Defendants' arguments are meritless, and are contrary to the rules of statutory construction applicable to the FMLA in general, and the FMLA "work site" rules, as mandated by the Sixth Circuit Court of Appeals.

A hearing was held on October 6, 2011, to address Defendants' motion. For the reasons provided herein, Defendants' motion will be denied.

## I.  Facts

Staffing Source Personnel, Inc. ("Staffing Source")[1], is an employee leasing company which provides employees to its customers. Young Supply Company is a customer of Staffing Source.

---

[1] Staffing Source does business as "Driver Source, Inc.," and as such both will be collectively referred to herein as "Staffing Source."

The contract between Staffing Source and Young Supply Company states that employees such as plaintiff "are at all times acting and performing the services to [Young Supply Company] as employees of Driver Source." ECF No. 13 Ex. A ¶ I.  The contract further provides that Staffing Source "will direct and control employees in all matters including hiring, termination, and discipline and shall establish wages, salaries, benefits, bonuses and advancements." *Id.* In addition, Staffing Source "shall maintain full and direct control over Driver Source personnel in regard to employee law matters, compensation, workers compensation and all indirect employment matters of the Driver Source employees leased to [Young Supply Company]." *Id.* ¶ II. Staffing Source likewise paid plaintiff his wages. ECF No. 13 Ex. B.

Plaintiff was hired by Staffing Source in October of 2002 to work as a truck driver.  Nine months later, Staffing Source assigned Plaintiff to work for defendant, Young Supply Company, as a truck driver.  In September of 2008 Plaintiff provided notice to Defendant of his need for a medical leave of absence in order to undergo surgery in January of 2009. Defendants concede that plaintiff's medical condition constituted a "serious health condition" under the FMLA.  ECF No. 6. at 5. Plaintiff commenced his leave of absence on January 12, 2009. At the completion of his medical leave of absence, Defendants refused to reinstate Plaintiff into his original job position, or an equivalent job position.

## II.   Standard of Review

Where, as here, a determination of a motion to dismiss involves consideration of evidence beyond the face of the complaint, the motion cannot be treated as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), but rather must be treated as a motion for summary judgment pursuant to Rule 56. Fed. R. Civ. P. 12(d).  A motion for summary judgment should be

granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be proven or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

     The court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III. Discussion

### A. The FMLA

The FMLA allows an employee to take up to 12 weeks of leave in a 12 month period for, among other things, the employee's own "serious health condition." 29 U.S.C. § 2612(a)(1). Upon completion of the leave, the employee is entitled to be reinstated into his or her original job position, or an equivalent job position. 29 U.S.C. § 2614(a)(1). Employers are prohibited from interfering with an employee's rights under the FMLA, and are prohibited from retaliating against employees who invoke their rights under the FMLA. 29 U.S.C. § 2615(a)(1) and (2); *Edgar v. JAC Products, Inc.*, 443 F.3d 501 (6th Cir. 2006).

For the protections of the FMLA to apply, the employee must be an "eligible employee." 29 U.S.C. § 2612(a)(1). An eligible employee is one who is employed by the employer for at least 12 months, and who has worked at least 1,250 hours for the employer within the 12 month period preceding the leave. 29 U.S.C. § 2611(2)(A)(i)-(ii). Defendants concede that Plaintiff is an eligible employee. However, the text of the FMLA provides for an "exclusion" to coverage under the Act: If the employer employs less than 50 employees at the employee's "worksite," or within 75 miles of the employee's "worksite." 29 U.S.C. § 2611(2)(B)(ii).

FMLA is a remedial statute, and as such, its coverages and protections must be construed and interpreted broadly in favor of the plaintiff. *Cobb v. Contract Transport, Inc.*, 452 F.3d 543, 559 (6th Cir. 2006). Furthermore, the 50/75 "worksite" provision is, by the very text of the FMLA, an "exclusion" to coverage and, as such, the 50/75 provision must be construed "narrowly." 29 USC § 2611(2)(B)(ii); *Cobb*, 452 F.3d at 559. Defendants contend that this statutory exclusion from coverage applies in the instant case because neither of them employed 50 or more employees within

75 miles of plaintiff's "worksite," which the defendants place at Young Supply Company's Saginaw, Michigan, facility. Plaintiff disputes this, and asserts that his "worksite" was Staffing Source's Dearborn, Michigan, facility, and Defendants concede that they employed 50 or more employees within 75 miles of Staffing Source's Dearborn, Michigan, facility.  The question then is what constitutes Plaintiff's "worksite."

The term "worksite" is not defined in the FMLA. *See* 29 U.S.C. § 2601-2654; *O'Dea-Evans v. A Place for Mom, Inc.*, 2009 WL 2143739, at *5 (N.D. Ill. 2009).  However, Congress specifically delegated the rule-making authority to the Secretary of Labor to "prescribe such regulations as are necessary to carry out" the FMLA. 29 U.S.C. § 2654. The Secretary of Labor utilized full notice and comment rule-making procedures when promulgating the regulations implementing the FMLA. *O'Dea-Evans*, 2009 WL 2143739, at *5. Pursuant to its rule-making authority specifically authorized by 29 U.S.C. § 2654, the Department of Labor enacted 29 C.F.R. § 825.111(a)(3) (1995), which defines the "worksite" for an employee of "joint employers," and will be discussed more fully below.  Defendants argue that the 1995 version of subsection (a)(3) should not be applied to the instant case, or, alternatively, that subsection (a)(2) is more appropriately applicable than subsection (a)(3).

### B.   Application of 29 C.F.R. §825.111(a)(2)

29 C.F.R. § 825.111(a)(2) states:

> For employees with no fixed worksite, e.g., construction workers, transportation workers (e.g., truck drivers, seamen, pilots), salespersons, etc., the "worksite" is the site to which they are assigned as their home base, from which their work is assigned, or to which they report. … For transportation employees, their worksite is the terminal to which they are assigned, report for work, depart, and return after completion of a work assignment.

There is no exception in this section for employees of joint employers, but Defendants

request that the Court determine that this section always applies to any transportation employee and conclude that Plaintiff's worksite was his home base, where he reported, where he was dispatched, departed and returned in Saginaw. Defendants assert that this more "specific" section pertaining to transportation employees should prevail over the "general" language pertaining to employees of joint employers whether they have changing or fixed worksites or are on short term or long term assignments. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (noting that "it is commonplace of statutory construction that the specific governs the general").

Defendants do not explain why subsection (a)(2) is more specific than subsection (a)(3) governing employees of joint employers. Defendants offer no legal support for their contention that subsection (a)(2) was meant to apply to all transportation employees and preempt the regulation relating specifically to employees of joint employers. Indeed, the language of 29 C.F.R. § 825.111(a)(2) only appears to address single-employer situations where an employee has no fixed worksite. Extending 29 C.F.R. § 825.111(a)(2) to apply to all transportation employees would thus be unjustified.

### C. Application of 29 C.F.R. § 825.111(a)(3)

The current version of 29 C.F.R. § 825.111(a)(3), which went into effect on January 16, 2009, provides:

> For purposes of determining that employee's eligibility, when an employee is jointly employed by two or more employers (see §825.106), the employee's worksite is the primary employer's office from which the employee is assigned or reports, unless the employee has physically worked for at least one year at a facility of a secondary employer, in which case the employee's worksite is that location. The employee is also counted by the secondary employer to determine eligibility for the secondary employer's full-time or permanent employees.

The prior version of 29 C.F.R. § 825.111(a)(3), however, provides that "when an employee

is jointly employed by two or more employers (see §825.106),the employee's worksite is the primary employer's office from which the employee is assigned or reports." Under both the old and new version of the regulations, the date upon which application of the 50/75 exclusion is determined is the date the employee provides notice of the need for leave. 29 C.F.R. § 825.110(f) (1995) and 29 C.F.R. § 825.110(e) (2009).

### 1.   Defendants' Arguments

Defendants first argue that the current regulation should apply because it was intended to replace the older version which was declared invalid by *Harbert v. Healthcare Servs. Group, Inc.*, 391 F.3d 1140 (10th Cir. 2004), *cert. denied* 126 S. Ct. 356. In *Harbert*, the plaintiff had been employed as a housekeeping supervisor at a nursing home, Sunset Manor, in Brush, Colorado, when a national cleaning company, Healthcare Services Group, Inc. ("Healthcare") contracted to provide cleaning services at the nursing home. The plaintiff's employment was transferred to Healthcare, but she continued to report for work and provide the same services at Sunset Manor. Sunset Manor's administrator exercised supervision and control over the plaintiff when she was employed by Sunset Manor, and this did not change after the plaintiff became an employee of Healthcare. *Id.* at 1143. The plaintiff still reported to her district manager at Healthcare at its regional office in Golden, Colorado. Such reports were almost always by telephone or through the submission of written reports; the plaintiff went to the Golden office only for an occasional district meeting of account managers." *Id.* When the plaintiff sought leave, she invoked the prior version § 825.111(a)(3), alleging that this was a joint employment between Healthcare and Sunset Manor, that Healthcare was the primary employer, and that, if its regional office in Golden were considered her worksite rather than the nursing home in Brush where she actually worked, Healthcare would be liable.

Healthcare had 50 or more employees within 75 miles of Golden, but not Brush.

The court explained that the rationale behind the 50/75 rule was Congress's recognition that even potentially large employers, i.e. those with more than 50 employees, may have difficulty finding temporary replacements for employees who work at geographically scattered locations. Congress thus determined that if an employer did not have a significant pool of employees nearby to cover for an absent employee, that employer should not be required to provide FMLA leave to that employee. The 75-mile radius that applies to the aggregation of employees at different facilities recognizes the difficulties an employer may have in reassigning workers to geographically separate facilities. Id. at 1150 (citing 29 U.S.C. §§ 2611(4)(A)(i), 2611 (2)(B)(ii); H.R. Rep. No. 102-135(I), at 37 (1991)).  The court concluded that requiring Healthcare to provide coverage for the plaintiff in Brush when it had no employees within 75 miles defeated the Congressional purpose. *Id.* at 1150.

The court also noted that the prior version of § 825.111(a)(3) would fictionalize an employee's worksite to a location where a plaintiff rarely, if ever, reported and would create an arbitrary distinction between sole and joint employers. The court reasoned that

> the joint employment provision creates the possibility that an employer's responsibility to provide FMLA leave to an employee will depend exclusively on whether that employer is a sole employer or a joint employer. This is true despite the fact that neither employer has an abundant supply of nearby employees to replace temporarily an employee taking leave and, consequently, are both subject to the burden Congress tried to alleviate by enacting the 50/75 provision.

*Id.* at 1150.  Based on this reasoning, as well as the contravention of the statutory purpose brought about by applying subsection (a)(3) to create an artificial worksite, the court held the regulation invalid and concluded that the plaintiff was not an eligible employee under the FMLA. Defendants argue that because the court in *Harbert* declared the old version of the regulation invalid, the new version should apply retroactively to the instant case.

Moreover, Defendants contend that the new version of the regulation was intended to repair the problem with the old version. The "Notice of Proposed Rule Making" proposed the change to the prior version of § 825.111(a)(3) as a response to "the courts decision in *Harbert* . . . . [holding] that the current regulation is arbitrary and capricious as applied to an employee with a long-term fixed worksite." 73 Fed. Reg. 67934, November 17, 2008. The comments to the rule change further explained that the general FMLA principle that an employer with fewer than 50 employees within 75 miles should not have to find temporary replacements for employees on leave, and the interest in having consistency between sole and joint employers counseled in favor of a different rule in that situation. *Id.* Defendants assert that the comments to the rule change make clear that the new version of the regulation was an acknowledgment by the Secretary of Labor that the prior rule was invalid pursuant to the holding in *Harbert*, and that the new version of the regulation was intended to cure that invalidity. Under these circumstances, Defendants argue that the Court can give retroactive application to the new regulation.

Defendants acknowledge that retroactivity is not favored in the law, *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208(1988), but contend that retroactive application of the new version of the regulation is appropriate. Generally, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* However, when a statute or rule does not substantively change the law but merely clarifies existing law, corrects a misinterpretation by a court, or overrules a wrongly decided case, the statute or rule may be applied retroactively. *See Brown v. Thompson*, 374 F.3d 253, 259 (4th Cir. 2004). In determining whether a revision of a rule changes or merely clarifies existing law, the Court "looks to statements of intent made by [the enacting body]." *Id.* (citing *Pimba Cortes v. Am. Airlines, Inc.*,

177 F.3d 1272, 1284 (11th Cir. 1999)).

Defendants argue that the rulemaking history for the change in subsection (a)(2) demonstrates that the new regulation was intended to address a finding that the prior version of the regulation was invalid. Defendants analogize the instant case to *Manhattan General Equipment Co. v. Commissioner*, 297 U.S. 129, 134-35 (1936). In *Manhattan General Equipment*, the petitioner/taxpayer disputed the power of the Court to give retroactive effect to a change in an IRS regulation affecting the allocation of a tax loss that the taxpayer wished to deduct. Finding that the original IRS regulation did not effectuate the statutory intent, the Court explained that because the original regulation could not be applied, the amended regulation in effect became the primary and controlling rule in respect of the situation presented. The court observed that the amended regulation pointed the way, for the first time, for correctly applying the antecedent statute to a situation which arose under the statute. Defendants submit that the *Harbert* court similarly determined that the prior regulation was inconsistent with the statute, that the prior version of the regulation is a mere nullity and that the amended version of subsection (a)(3) is likewise "the primary and controlling rule in respect of the situation presented." *Id.* at 135. Accordingly, Defendants request that the Court conclude that Plaintiff's worksite is Saginaw and grant summary judgment because Plaintiff is not eligible under the FMLA.

Even if the Court concludes that giving retroactive effect to the statute is improper, Defendants urge the Court to look to the new version of the regulation as an aid in both interpreting the prior regulations and the statute, *Victorelli v. Shadyside Hosp.*, 128 F.3d 184, 186 (3d Cir. Pa. 1997); *Scamihorn v. General Truck Drivers, et al.*, 282 F.3d 1078 (9th Cir. 2002), and that proper interpretation of the entire regulation, taken as a whole, is that Plaintiff's worksite was Saginaw.

### 2. Plaintiff's Arguments

Plaintiff asserts that 29 C.F.R. § 825.111(a)(3) (1995) is a valid exercise of the Department of Labor's rule-making authority delegated to it by Congress, and as such is entitled to deference under *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Plaintiff contends that *Harbert* does not apply to the application of § 825.111(a)(3) (1995) to employees with no fixed worksite who are employed by employee leasing agencies. *Harbert*, 391 F.3d at 1153. To the contrary, Plaintiff submits that the court in *Harbert* limited its decision to circumstances where an employee of joint-employers works at a fixed location every day and does not routinely leave that location. *Id.*

More specifically, in concluding that 29 C.F.R. § 825.111(a)(3) (1995) was not entitled to *Chevron* deference, the court emphasized that it was limiting its decision concerning the regulation to the unique situation presented in that case where the joint employee physically reported to and remained nearly exclusively at a fixed location of employment. *Harbert*, 391 F.3d at 1149, 1151 ("we conclude that § 825.111(a)(3), as applied to the situation of an employee with a fixed place of work, is arbitrary, capricious and manifestly contrary to the FMLA" and stating that the *Chevron* deference factors militate against deference "as applied to plaintiff").

The court also made clear that its invalidation of § 825.111(a)(3) did not apply to employees with no fixed worksite such as temporary and leased employees. *See Harbert*, 391 F.3d at 1153. This point distinguishes *Harbert* from the instant case, in which Plaintiff, as a truck driver, had no fixed worksite under the FMLA and was employed by an employee leasing company. *Cobb*, 452 F.3d at 557-58. Plaintiff argues that the particular application of the prior version of § 825.111(a)(3) deemed to be invalid in *Harbert* does not exist here, and as such, the liability-defeating aspect of the

*Harbert* decision is inapplicable and inapposite to this case. To the contrary, the court in *Harbert* upheld the validity of the prior version of § 825.111(a)(3) to cases such as this in which the employee has no fixed worksite, and is employed by an employee leasing agency. *Harbert*, 391 F.3d at 1153. Therefore, not only does *Harbert* not support Defendants' position in this case, but it actually supports application of the prior version of § 825.111(a)(3) to this case, and thus establishes Defendants' potential liability.

Moreover, even if the holding *Harbert* did apply to the facts of this case, this Court is not bound by the Tenth Circuit's decision in *Harbert*. *Nixon v. Kent County*, 76 F.3d 1381, 1388 (6th Cir. 1996) (en banc). To the contrary, the Court is required to "independently decide [its] own cases," even if it results in disagreement with courts in other circuits, *id.,* and Plaintiff submits that the holding in *Harbert* should not be followed. Under *Chevron*, courts apply a two-step analysis to determining the validity of an agency's regulation promulgated pursuant to Congressional rule-making delegation. "First always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. This is determined by resort to the traditional tools of statutory construction. *Id.* at 843. "If . . . the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation." *Id.* "Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* An agency's answer is permissible, and therefore controlling, unless found to be arbitrary, capricious or manifestly contrary to the

statute. *Id.* at 843-44. "It is not [the court's] role to determine the most appropriate interpretation of the statute, but simply to assess whether the regulation reflects a reasonable construction." *Khan v. United States*, 548 F.3d 549, 554-55 (7th Cir. 2008). Furthermore, where, as with the FMLA regulations, the Secretary of Labor has closed the gap using notice and comment rule-making, Chevron deference should ordinarily be afforded. *See United States v. Mead Corp.*, 533 U.S. 218, 228-29 (2001) (holding that the use of notice and comment rule-making is "a very good indicator" of rulemaking meriting *Chevron* deference).

Here, the FMLA is silent as to what constitutes a "worksite." *O'Dea-Evans*, 2009 WL 2143739, at *5. The analysis then proceeds to step two of the *Chevron* framework. In *Harbert*, the court found that the reasonableness of the prior version of § 825.111(a)(3) was "a very close question." *Harbert*, 391 F.3d at 1149. Plaintiff contends that the question that must then be asked is: If the reasonableness of the Department of Labor's interpretation of FMLA's definition of "worksite" is "a very close question," then how can it be that the regulation is "arbitrary," "capricious," or "manifestly contrary" to the statute?

Regardless of the approach taken by the Tenth Circuit, the Sixth Circuit takes a more deferential approach toward the FMLA regulations. *See Grace v. USCAR*, 521 F.3d 655, 663 (6th Cir. 2008) (holding that "courts have consistently applied the Department of Labor regulations when addressing questions about FMLA leave."). Contrary to Defendants' claim, the Sixth Circuit did not cite to *Harbert* "with approval." Rather, the Sixth Circuit cited to *Harbert* as an anomaly among decisions addressing the validity of the FMLA regulations. *Grace*, 521 F.3d at 663; *see Cobb*, 452 F.3d at 558 (cited to *Harbert* for a statement of the law unrelated to the actual validity of the regulation).

In the instant case, Defendants entered into an employee leasing contract retaining absolute control over the leased employee, providing for paying the employee's wages, and specifically retaining "full and direct control" in regard to "employee law matters." ECF No. 13 Ex. A. Even if such a contract did not exist in this case, the interpretation of "worksite" contained in the prior version of § 825.111(a)(3) for an employee with no fixed worksite, such as truck drivers, who are employed by temporary or leasing agencies, would nonetheless be a reasonable and valid exercise by the Secretary of Labor of the rule-making authority delegated to her by Congress. The Secretary was within reason to conclude that any hardship caused by designating the leasing agency's office as the employee's "worksite," even when the employee physically reports to the secondary employer's facility, would ordinarily be alleviated by the additional resources inherent in a joint-employer arrangement. In a joint-employer arrangement, the manpower and resources of two employers are at play, not merely one. Thus, the Secretary was well within reason to conclude that any hardship occasioned by designating the employee's "worksite" as the primary employer's facility would ordinarily be alleviated by the ability of the leasing agency and/or the secondary employer to more easily find a replacement for the employee while on leave which is exactly what occurred in the instant case. Therefore, Plaintiff argues that it cannot be said that the interpretation of "worksite" contained in the prior version of § 825.111(a)(3) for an employee with no fixed worksite, such as truck drivers, who are employed by temporary or leasing agencies lacks any rational basis, so as to be "arbitrary," "capricious," or "manifestly contrary" to the FMLA.

### IV. Conclusion

Although the Court agrees with the Tenth Circuit in *Harbert* that this issue presents "a very close question," the Court, pursuant to the rules of statutory construction applicable to the FMLA

as a remedial statute, must construe and interpret its coverages and protections broadly in favor of Plaintiff. *Cobb*, 452 F.3d at 559. Furthermore, the 50/75 "worksite" provision is, by the very text of the FMLA, an "exclusion" to coverage. 29 U.S.C. § 2611(2)(B)(ii); *Cobb*, 452 F.3d at 559. As such, the 50/75 provision must be construed "narrowly." *Id.* With these rules of statutory construction in mind, the Court will afford *Chevron* deference to 29 C.F.R. § 825.111(a)(3) (1995), and hold that Plaintiff's "worksite" under the FMLA was Staffing Source's office in Dearborn, Michigan.

Additionally, the Court will not give retroactive effect to the new version of § 825.111(a)(3) because the retroactive application of amendments to regulations is disfavored. *See Woodward v. Dep't of Justice*, 598 F.3d 1311 (Fed. Cir. 2010). Regulations, and amendments thereto, are ordinarily presumed not to have retroactive effect. *Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109 (6th Cir. 1997). Specific to the FMLA, Congress did not extend the Secretary of Labor the authority in 29 U.S.C. § 2654 to make its regulations retroactive, and as such regulations promulgated under the FMLA cannot be given retroactive effect. *Bauer*, 118 F.3d at 1111, n.1. Furthermore, the 2009 amendments to the FMLA regulations also do not provide for retroactive effect and should therefore not be given retroactive effect. *McDonald v. Mt. Perry Foods, Inc.*, 2011 WL 3321470 (S.D. Ohio 2011).

The prohibition against giving retroactive effect to the amended version of the regulation is likewise supported by the text of the 2009 amended regulations. Eligibility for FMLA protection under the 50/75 exclusion, under both versions of the regulations, is determined as of the date the employee gives notice of the need for leave. 29 C.F.R. § 825.110(f) (1995) and 29 C.F.R. § 825.110(e) (2009). Under both sets of regulations, the date upon which application of the 50/75

exclusion is determined is the date the employee provides notice of the need for leave. 29 C.F.R. § 825.110(f) (1995) and 29 C.F.R. § 825.110(e) (2009). Defendants concede that Plaintiff provided notice of his need for leave in September 2008, ECF No. 6 at 5, which is before the amended regulations took effect on January 16, 2009. As such, the original version of 29 C.F.R. § 825.111(a)(3) (1995) must be applied, and the amended 2009 version cannot be given retroactive effect.

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment (ECF No. 6) is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: December 15, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 15, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS

---